IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DOTTIE M. S.,[1]                                     )
                                                     )
    Plaintiff,                          )
                                                     )
vs.                                                  )   Case No. 3:21-cv-1739-DWD
                                                     )
COMMISSIONER OF SOCIAL                               )
SECURITY,                                            )
                                                     )
    Defendant.                          )

MEMORANDUM & ORDER

**DUGAN, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff, represented by counsel, seeks

judicial review of the final agency decision denying her application for Disability

Insurance Benefits (DIB).  For the reasons discussed below, the final agency decision is

due to be reversed.

### I.  Procedural History

Plaintiff applied for disability benefits in May 2017, alleging disability as of March

30, 2016. Plaintiff's claim was denied ("First ALJ Decision"), and Plaintiff appealed. The

First ALJ Decision was reversed and remanded. (Tr. 1609, 1629). Following remand,

Plaintiff testified at a hearing in the presence of counsel, and the ALJ issued a second

decision ("Second ALJ Decision"). (Tr. 1519, 1547). In the Second ALJ Decision, the ALJ,

once again, found Plaintiff not disabled. (Tr. 1519-1538). The ALJ determined that,

---

[1] In keeping with the Court's practice, Plaintiff's full name will not be used in this Memorandum and Order
due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

through her date last insured in June 2017, Plaintiff retained the residual functional capacity to perform work that existed in significant numbers in the national economy. (Tr. 1522-38). Representative jobs the ALJ found Plaintiff could perform included housekeeper, laundry folder, and bakery worker, with an estimated 1,075,000 such positions in existence. (Tr. 1536). The Second ALJ decision is a final decision, and Plaintiff has exhausted administrative remedies. Plaintiff directly appealed to this Court, which has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II.     Issues Raised by Plaintiff

Plaintiff raises one issue:  Whether the ALJ erred in relying on vocational expert testimony that failed to describe job incidence data with a reliable methodology and that was undermined by the cited governmental source.

## III.     Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statute.[2] Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have

---

[2] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404.

a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 404.1520.  An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

Here, the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the Court is not tasked with determining whether or not Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal citations omitted).  In reviewing for "substantial evidence," the Court takes the entire administrative record into consideration but does *not* "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial

3

review is deferential, it is not abject; the Court does not act as a rubber stamp for the

Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## IV.    Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in preparing

this Memorandum and Order. The following summary of the record is directed to the

points raised by Plaintiff.

An evidentiary hearing was held on August 24, 2021 (Tr. Pp. 1547-1568). Plaintiff

was represented by an attorney at the hearing. During the hearing, Brenda Young, a

vocational expert ("VE") testified. The ALJ asked the VE a hypothetical question that

corresponded to the Residual Functional Capacity ("RFC") assessment – whether there

would be work for an individual with the same age, education, and work experience as

Plaintiff, but with the following limitations:

- Light work only;
- Never climb ladders, ropes or scaffolds;
- frequently climb ramps or stairs and frequently crawl;
- no more than occasional exposure to hazards such as unprotected heights;
- maintain the attention required to perform simple/routine tasks and make simple work-related decisions;
- perform work that was not at a fast pace such as on an assembly line, but could stay on task and meet reasonable production requirements in an environment that allowed for a flexible and goal-oriented pace; and
- could tolerate occasional interaction with co-workers or the public.

(Tr. 1563-64). The VE opined that such a person could perform several jobs including

housekeeper (approximately 900,000 jobs nationally), laundry folder (approximately

105,000 jobs nationally), and bakery worker (approximately 70,000 jobs nationally). (Tr.

1564).

Plaintiff's attorney cross examined the VE regarding her methodology, asking "Alright, and can you tell us how you estimated your job numbers?" (Tr. 1566). The VE answered, stating her numbers were "based on research by the Bureau of Labor Statistics." (Tr. 1566). Plaintiff's attorney then concluded the questioning by stating she had no additional questions for the VE. (Tr. 1566). At the close of the hearing, Plaintiff's attorney confirmed, in response to a question from the ALJ, that she had nothing further to add. (Tr. 1567).

After the hearing, Plaintiff's attorney submitted a letter to the ALJ, stating that she objected to the VE's testimony:

> The VE's opinions as to job incidence data lack a reliable methodology. There is no specific confirmable methodology described in the record, and no evidence that the VE's methods for obtaining job incidence data are reliable and well accepted, or why that is so. The record is unacceptably vague, and this fails to satisfy the Commissioner's burden at step five.

(Tr. 1859).

The ALJ acknowledged Plaintiff's objection in her decision, but overruled it, explaining, in relevant part, as follows:

> The vocational expert testified, based on questioning from the representative, that her job numbers were based on the Bureau of Labor Statistics. This objection is overruled.

(Tr. 1536).

> The vocational expert retained in this matter is a highly skilled and qualified individual, as the curriculum vitae reflected in the file demonstrates. She has extensive education and experience in the field of vocational rehabilitation. Additionally, she has extensive experience in labor market research, documentation of employment options, transferable skills, and job modifications. The representative's objection fails to take into consideration the experience and expertise upon which Ms. Young based

5

her expert opinion and the indices of reliability found in her experience and the testimony itself. I note that at the hearing I afforded the representative an opportunity to inquire of the vocational expert regarding any additional areas, and she did not make further inquiries into the job number methodology.

(Tr. 1537).

### III.  Analysis

Plaintiff contends that the VE's answer regarding the source of her job incidence data, "research by the Bureau of Labor Statistics," was impermissibly vague and not based on reliable methodology. As a result, Plaintiff argues, the ALJ's finding that there are a significant number of jobs for housekeeper/bakery worker/laundry folder in the national economy is not based on substantial evidence. Plaintiff further explains that the Bureau of Labor Statistics does not report or research job incidence data according to DOT codes. Accordingly, data from the Bureau of Labor Statistics, standing alone, could not possibly support the VE's job incidence testimony, which relied on DOT codes. Moreover, Plaintiff argues, publicly available job incidence data produced by the Bureau of Labor Statistics contradicts the job incidence data provided by the VE.

Plaintiff's contention regarding how the Bureau of Labor Statistics reports its job incidence data is correct. "The Social Security Administration utilizes the job classification system in the U.S. Department of Labor's *Dictionary of Occupational Titles* (DOT), but the DOT does not provide estimates of the prevalence of these jobs in the national economy." *Fetting v. Kijakazi,* 62 F.4th 332, 337 (7th Cir. 2023). Accordingly, many vocational experts base their estimates on the U.S. Bureau of Labor Statistics'

*Occupational Employment Statistics* ("OES") database.[3] *Id.* The OES contains annual employment estimates for 800 occupations. *Id.* The OES does not use the DOT classification system. *Id. See also Chavez v. Berryhill*, 895 F.3d 962, 965–66 (7th Cir. 2018). Instead, the OES uses Standard Occupational Codes ("SOC"). *Fetting,* at 337. SOC codes sort jobs into broad occupational categories which encompass multiple DOT job titles. *Id.; Ruenger v. Kijakazi*, 23 F.4th 760, 762 (7th Cir. 2022). Accordingly, when calculating job estimates, vocational experts must convert the information in the OES from the SOC system to the DOT system." *Id.*

Plaintiff is also correct regarding the sufficiency of the VE's explanation regarding the basis for her job incidence data.[4] The ALJ had the burden to establish that there are a significant number of jobs in the national economy that someone with Plaintiff's abilities and limitations can perform. 20 C.F.R. § 416.960(c)(2). In this case, the ALJ relied on a vocational expert, who testified that a person with the limitations found by the ALJ could find work in the national economy.

An ALJ's decision must be based on substantial evidence. *Summers v. Berryhill,* 864 F.3d 523, 526 (7th Cir. 2017). When the decision relies on job estimates from a vocational expert, it is based on substantial evidence only if those job estimates are the product of a reliable method. *Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018). "A 'precise count is not necessary,' but the VE's testimony 'must be supported with evidence sufficient to

---

[3] In the instant case, we do not know if the VE relied on the OES (though that seems to be the most likely source). We only know that she relied on "research" from the Bureau of Labor Statistics.
[4] As is discussed more fully below, the Commissioner contends that Plaintiff waived this argument by not objecting during the hearing. The Commissioner's briefing focuses solely on the waiver issue and does not address the sufficiency of the VE's testimony regarding her methodology.

provide some modicum of confidence in its reliability.'" *Fetting*, 62 F.4th at 339 (quoting

*Brace v. Saul,* 970 F.3d 818, 822 (7th Cir. 2020).  A reliable methodology is based on "well-

accepted sources." *Ruenger v. Kijakazi*, 23 F.4th 760, 763 (7th Cir. 2022). "Additionally, the

VE must explain his methodology 'cogently and thoroughly,' and this explanation must

be sufficient to instill some confidence that the estimate was not 'conjured out of whole

cloth.'" *Fetting,* 62 F.4th at 339 (quoting *Ruenger,* 23 F.4th at 763).

In the instant case, when asked about how she arrived at her numbers, the

vocational expert responded with nothing more than "research by the Bureau of Labor

Statistics." The VE did not specify what that research was, and she did not explain how

she converted the unspecified "research" into DOT codes. The VE's vague and

perfunctory answer "obscured the origin of her job estimates" and did not "set forth an

understandable methodology." *Ruenger v. Kijakazi,* 23 F.4th 760, 763 (7th Cir. 2022).

"Without this fundamental information, the vocational expert's testimony could not have

provided the ALJ with sufficient confidence that her methodology was reliable." *Id.*[5]

---

[5] The Court's analysis is further supported by the Seventh Circuit's decision in *Brace v. Saul*, 970 F.3d 818, 822 (7th Cir. 2020). In *Brace*, the plaintiff's attorney asked the VE to explain the method he used to arrive at his job-number estimate of 140,000. He responded as follows:

> Well, it's—it's that combination of, one, you are looking at the number of titles that are in that [OES] category[,] and then based upon the—my information that I have as far as how the frequency of those jobs are performed, then we do an allocation based upon weighting or re-weighting those allocations to get the estimates of the numbers.

*Brace,* 970 F.3d at 822. The Seventh Circuit concluded that the VE's testimony did not satisfy the substantial-evidence standard. *Id.* at 823. In so holding, the Appellate Court explained:

> This answer is entirely unilluminating. Testimony that incants unelaborated words and phrases such as "weighting" and "allocation" and "my information that I have" cannot possibly satisfy the substantial-evidence standard. What allocations? How is the weighting and re-weighting performed? According to what criteria? And what is the unidentified "information" in the expert's possession?

This, however, does not end the Court's inquiry. An ALJ is only required to make an inquiry into the basis for and reliability of a VE's conclusions "when confronted by a claimant's challenge." *Chavez v. Berryhill*, 895 F.3d 962, 970 (7th Cir. 2018). The Commissioner argues Plaintiff waived her right to object to the VE's testimony by failing to object at the hearing. (Doc. 14, p. 3) (citing *Coyier v. Saul*, 860 F. App'x 426, 427-28 (7th Cir. 2021) ("However, Coyier waived any challenge to the VE's testimony by failing to ask any questions to reveal shortcomings in the job-number estimates . . . These omissions effectively conceded the reliability of the VE's job numbers."). According to the Commissioner, post-hearing objections to testimony from a VE are "too late." (*Id.*) (citing *Gaylord v. Berryhill,* No. 17-cv-03196, 2019 WL 1330892 (C.D. Ill. Mar. 25, 2019) ("a party must object to a vocational expert's testimony at the administrative hearing to avoid forfeiting that objection."). The Commissioner also suggests that, even if the objection had been timely, it was too generic to preserve the issue for appeal. (Doc. 14, pp. 4-5).

A claimant must object to a VE's estimates or otherwise indicate that the methodology is unreliable at the administrative level to preserve the issue on appeal. *Fetting v. Kijakazi*, 62 F.4th 332, 337 (7th Cir. 2023). The Seventh Circuit requires "parties to object to issues and preserve arguments for a reason – first and foremost, to ensure that all sides develop the record they wish to subject to appellate review." *Leisgang v. Kijakazi*, 72 F.4th 216, 219 (7th Cir. 2023). *See also Id.* at 220 ("a claimant may not start objecting to unquestioned and uncontradicted VE testimony in federal court after the

---

*Id.* at 822. In the instant case, the VE's answer provided even *less* information than the answer at issue in *Brace*.

closure of the administrative record."). As noted by the Commissioner, some district courts have concluded that post-hearing objections are too late to preserve an issue for appeal. The Court also notes there are Seventh Circuit decisions that contain language suggesting objections not raised during the hearing are waived. *Fetting v. Kijakazi, 62 F.4th 332 (7th Cir. 2023)* ("A claimant who fails to object *at the hearing* forfeits any challenge to the VE's testimony.") (emphasis added). But the Seventh Circuit's most recent decision addressing this issue, *Leisgang v. Kijakazi, 72 F.4th 216 (7th Cir. 2023),* suggests otherwise:

> As we explained in *Fetting*, a claimant must object to the VE's testimony or otherwise indicate that the testimony is unreliable during the administrative hearing (*or after, in a posthearing brief*) to preserve his objection.

*Id.* at 220 (emphasis added). Considering the Seventh Circuit's decision in *Leisgang*, the Court finds that Plaintiff's possthearing objection was not too late. This, however, does not necessarily mean that Plaintiff's objection has been preserved. The Seventh Circuit has also emphasized that "[g]eneral objections or vague questions about the VE's methodology are, without more, insufficient." *Id.*

Thus, the Court must also consider whether Plaintiff's posthearing objection was specific enough to preserve the issue for appeal. The Seventh Circuit's decision in *Fetting v. Kijakazi, 62 F.4th 332 (7th Cir. 2023)* is instructive on this issue. In *Fetting*, the plaintiff's attorney did not make any pre or posthearing objections as to the VE's job number testimony. The Plaintiff, however, argued that his lawyer's questioning at the hearing sufficiently preserved the issue for appeal. In rejecting this argument, the Seventh Circuit provided the following guidance:

[The] objection must be specific; to avoid forfeiture, a claimant must do more than make a general objection or vaguely ask the VE about his methodology. *Compare Coyier v. Saul*, 860 F. App'x 426, 427–28 (7th Cir. 2021) (finding forfeiture where the claimant made only one general objection and asked no specific questions), *with Chavez*, 895 F.3d at 966 (addressing the claimant's arguments where she made "repeated" objections about the VE's use of the equal distribution method), *and Brace v. Saul*, 970 F.3d 818, 821 (7th Cir. 2020) (addressing the claimant's arguments where he objected that the VE's estimate "*lacked sufficient foundation and methodological rationality*").

*Fetting,* 62 F.4th at 338 (emphasis added). In *Fetting*, the Seventh Circuit concluded that, although the plaintiff's attorney asked the VE "four questions regarding the VE's methodology," he did not preserve the issue for appeal because he did not "otherwise object or indicate that he *believed the methodology was unreliable*." *Id.* (emphasis added).

In the instant case, Plaintiff's posthearing letter expressly indicated that she believed the VE's "job incidence data lack[ed] a reliable methodology." She further indicated that there was "no specific confirmable methodology described in the record, and no evidence that the VE's methods for obtaining job incidence data are reliable and well accepted."[6] This objection clearly indicated that Plaintiff's counsel believed the VE's methodology was unreliable.[7] Thus, after receiving Plaintiff's objection, the ALJ was required to ask the "VE to offer a reasoned and principled explanation." *Chavez v. Berryhill,* 895 F.3d 962, 970 (7th Cir. 2018). Here, the ALJ could have done so by asking the vocational expert to further support her estimate by offering an explanation after the

---

[6] The content of Plaintiff's posthearing objection was similar to the objection raised by plaintiff's counsel in *Bruno v. Saul*, 817 Fed. Appx. 238 (7th Cir. 2020). In *Bruno*, counsel objected to the VE's testimony "on the basis that a proper and rational methodology has not been explained." The ALJ overruled the objection. Although the issue of waiver was not expressly discussed, the Seventh Circuit noted the objection and considered the plaintiff's argument as to the VE's methodology on the merits.

hearing. *Id.* The ALJ did not do this. Instead, the ALJ rejected the objection because it was not raised during the hearing. The ALJ then adopted the VE's testimony, ignoring the fact that the VE did not describe her methodology or clearly identify the source of her job incidence data.

The ALJ attempted to justify her decision by relying on the VE's qualifications, noting that the VE is "a highly skilled and qualified individual" with "extensive education and experience." That finding may well be true, and this Court assumes it to be so for the purposes here. But, to, in effect, say "take the expert's word for it because she is highly educated, experience and qualified" does not replace the need for evidence that the methodology employed is reliable. Indeed, the question of whether an expert is qualified to offer an opinion and whether they utilized a reliable methodology are separate inquiries. The fact that an individual is "qualified" to render an opinion does not necessarily mean that the opinion offered is the product of reliable methodology. An ALJ should not simply rubber stamp a VE's opinions because he or she is highly qualified in her field of endeavor.

Because Plaintiff's post-hearing letter raised arguments that called into question the reliability of the VE's conclusions, the burden was on the ALJ to investigate the VE's methods and find out whether the VE's conclusions were reliable. *Leisgang v. Kijakazi*, 72 F.4th 216, 219-220 (7th Cir. 2023); *Overman v. Astrue*, 546 F.3d 456, 464–65 (7th Cir. 2008). The ALJ failed to do this, and the Court cannot determine how the VE reached the job incidence numbers she provided. As such, the ALJ's conclusion that there are significant numbers of jobs in the national economy for Plaintiff to perform is not based on

12

substantial evidence. As such, remand is necessary.

### V.  Conclusion

The final decision of the Commissioner of Social Security denying Plaintiff's application for social security benefits is **REVERSED** and **REMANDED** for further proceedings. On remand, the ALJ will need to inquire into the vocational expert's methods, whether those methods are reliable, and whether they were accurately applied to the case at hand, before using the expert's conclusions in the analysis.

The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Dottie M. S.

**SO ORDERED.**

Dated: September 25, 2023

/s *David W. Dugan*

_____
DAVID W. DUGAN
United States District Judge